Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RICHARD LIPP JR.,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**REFLIP HOMES LLC**, a California company,<br><br>*Defendant.* | Case No. '26CV1851 BAS VET<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Richard Lipp Jr. ("Plaintiff Lipp" or "Lipp") brings this Class Action Complaint and Demand for Jury Trial against Defendant Reflip Homes LLC, ("Defendant" or "Reflip Homes") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited telemarketing text messages to consumers whose phone numbers are registered on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and

monetary relief for all persons injured by Defendant's conduct. Plaintiff Lipp, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Lipp is a resident of Chula Vista, California.

2. Defendant Reflip Homes is a company registered in California, with its headquarters located in Laguna Beach, California. Defendant Reflip Homes conducts business throughout this District and throughout California.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—

3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in December 2025 alone, at a rate of 132.6 million per day. www.robocallindex.com (last visited January 18, 2026).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant Reflip Homes purchases properties from consumers for cash.[3]

14. Defendant sends telemarketing text messages *en masse* to consumers to solicit its cash buying offers.

15. Some of the unsolicited telemarketing text messages from Reflip Homes are sent to consumers whose phone numbers are registered on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://refliphomes.com/

16. Wesley McAnally, a co-owner of Reflip Homes is open about how he generates business, as per an interview that was posted on the Youtube channel DealMachine:



[4]

17. In the interview, McAnally discusses how he solicits cash offers to property owners stating, “I think the data’s always good to keep churning. So even in a year from now, the leads I got last month, I’m still going to be dropping voicemails on them. ***I’m still going to be dropping texts on them***…”[5] (emphasis added)

[4] https://www.youtube.com/watch?v=P18k7t3OhsY

[5] Id. – 7 minutes, 12 seconds

18. Later in the same video, McAnally admits to buying leads so he can skip trace them and enter them into a dialer, explaining, "… but what we're doing is, I actually have someone that's on a dialer as well, so ***as soon as we get the leads, we skip trace them, we put them in a dialer*** and then we go ahead and we call about a month later…"[6] (emphasis added)

19. The use of skip tracing services is itself an admission that Defendant lacks consent to contact these consumers. Skip tracing—a process of searching databases to locate a person's contact information—is only necessary when the caller does not already have a direct relationship with the consumer. A business that has obtained a consumer's phone number through legitimate means has no need to skip trace the phone numbers.

20. The text messages Reflip Homes sends are 'telephone solicitations' as defined by 47 C.F.R. § 64.1200(f)(14), which defines the term as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

21. Reflip Homes' text messages solicit commercial real estate transactions as the Defendant initiates contact with property owners to encourage them to sell their property to the Defendant.

[6] Id. – 7 minutes, 56 seconds

22. These are commercial solicitations for Defendant's business. Reflip Homes is a for-profit company that generates revenue by purchasing properties below market value and reselling them at a profit.

23. Reflip Homes is in the business of providing home selling and realty services, and its text messages were for the purpose of encouraging consumers to agree to and pay for those services.

24. The Defendant refers to itself in its website as “a real estate solutions company”[7] and as a “family-owned business.” Defendant also states, “We provide win-win solutions to help homeowners get out of their sticky situations, including foreclosure, owning a burdensome property, probate, or anything else.”[8]

25. Reflip Homes’ services to sellers are provided as a means of streamlining the sales process to eliminate having to pay “one more utility payment, tax payment, insurance payment, mortgage payment, or any of the other costs associated with a home.”[9]

26. Defendant’s website confirms that these are commercial solicitations, admitting that Defendant purchases properties “below market value” to “resell it at a profit” and seeks to “get a fair discount on a property”:

[7] https://refliphomes.com/our-company/
[8] Id.
[9] Id.

> **Q: Do you pay fair prices for properties?**
> A: Many of the houses we purchase are below market value. We do this so we can resell it at a profit to another homeowner. We are looking to get a fair discount on a property. In our experience, many sellers aren't necessarily expecting a large "windfall" on the property. Instead, they appreciate that we can offer cash, we close very quickly (no waiting for financing), and no time, effort, or expense is required on your part to fix up the property or pay agent fees. If that's what you're looking for and you see the value in getting your house sold fast, let's see if we can come to a win-win price for both parties. Our no-obligation pricing commitment means that you don't have to move forward with the offer we give… but it's good to know what we're offering! [10]

27. In response to these text messages, Plaintiff Lipp brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF LIPP'S ALLEGATIONS

28. Plaintiff Lipp is the sole owner and user of his cell phone number ending in 0339.

29. Plaintiff Lipp registered his cell phone number on the DNC on November 14, 2021.

30. Plaintiff Lipp uses his cell phone number for personal and household use only as one would use a residential landline.

---

[10] https://refliphomes.com/faq/

31. Plaintiff Lipp does not and has never used his cell phone number for business purposes or employment.

32. It has never been held out by Plaintiff Lipp to the public or advertised for business purposes.

33. It has only ever been used as a personal use phone number.

34. Plaintiff Lipp uses his cell phone number to communicate with family and friends.

35. Plaintiff Lipp uses his cell phone to deal with household issues like scheduling services.

36. Plaintiff Lipp's cell phone has a 619 California area code.

37. Plaintiff Lipp does not own a property in California.

38. The text messages that Plaintiff Lipp received from Defendant Reflip Homes were all received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

39. On December 1, 2025 at 1:45 PM, Plaintiff Lipp received an unsolicited text message to his cell phone from 760-406-8724:




40. As per the screenshot above, the text message clearly states that it was sent by Ava with Reflip Homes.

41. Another consumer posted a complaint about an unsolicited text from 760-406-8724 that identifies the company name Reflip Homes on Nextdoor.com:



[11]

42. On December 18, 2025 at 9:47 AM, Plaintiff Lipp received a 2nd unsolicited text message to his cell phone from 760-406-8724:

[11] https://nextdoor.com/neighborhood/viadiego--lakeside--ca/




43. Plaintiff Lipp does not own 1155 Tobias Dr.

44. The property that the text messages refer to is owned by Plaintiff's father, who has the name Richard Lipp.

45. Plaintiff Lipp has never done business with Reflip Homes and did not provide consent to receive solicitation text messages.

46. Plaintiff has no established business relationship with Defendant that would exempt Defendant from DNC compliance requirements.

47. Defendant's text messages constitute 'telephone solicitations' subject to the DNC rules. 47 C.F.R. § 64.1200(a)(2).

48. The unauthorized solicitation text messages that Plaintiff Lipp received from or on behalf of Defendant Reflip Homes have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

49. Seeking redress for these injuries, Plaintiff Lipp, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

50. Plaintiff Lipp brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States (1) to whom Reflip Homes sent more than one text message, (2) within any 12-month period, (3) for the purpose of soliciting the sale or purchase of real property on behalf of Defendant's business, (4) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days prior to receiving such text messages, (5) during the period from four years prior to the filing of this action through the date of class certification.

51. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Lipp anticipates the need to amend the Class definition following appropriate discovery.

52. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text;

(c) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff Lipp will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Lipp has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Lipp and his counsel are committed to vigorously prosecuting this action on behalf of the

members of the Class, and have the financial resources to do so. Neither Plaintiff Lipp nor his counsel have any interest adverse to the Class.

55. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Lipp. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lipp and the Do Not Call Registry Class)**

56. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

59. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Lipp and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

60. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Lipp and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200,

as described above.

61. As a result of Defendant's conduct as alleged herein, Plaintiff Lipp and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Lipp requests a jury trial.

Respectfully Submitted,

**RICHARD LIPP JR.**, individually and on behalf of all others similarly situated,

DATED this 24th day of March, 2026.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*